IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SOTHEBY'S INTERNATIONAL REALTY AFFILIATES LLC,<br><br>                Plaintiff,<br><br>      v.<br><br>MLJ HOLDINGS, LLC d/b/a Southport Sotheby's International Realty, KARINA M. CAULFIELD, and GRAFTON HOLDINGS, LLC d/b/a Conlon, a Real Estate Company,<br><br>                Defendants. | Case No. 12 C 2173<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for a Preliminary Injunction seeking the deposit into escrow of commissions on the sale of some seventy real estate listings. For the reasons stated herein, the Motion is denied.

### I. BACKGROUND

Plaintiff Sotheby's International Realty Affiliates, LLC (hereinafter, "SIR") had a Franchise Agreement with Defendant MLJ Holdings, LLC ("MLJ"). MLJ is a real estate brokerage firm and agreed to pay certain royalties and fees to SIR. The Franchise Agreement was personally guaranteed by MLJ's manager, Defendant Karina M. Caulfield ("Caulfield"). MLJ also signed a promissory note in July 2010 agreeing to pay SIR $195,090.30 over 30 months.

MLJ executed a security agreement in July 2010 with SIR for both payment of the note and performance of the Franchise Agreement.

MLJ admits it subsequently breached the terms of the note. MLJ's Am. Answer ¶ 95, 96. MLJ and SIR disagree over whether the Franchise Agreement was revoked, but it is clear that MLJ owes SIR a significant amount of money. *Id*. In its Answer to SIR's Complaint, MLJ admits its breach of the terms of the note damaged SIR in the amount of at least $20,533.26, plus interest. *Id*. It also admits to missing payments under the Franchise Agreement. *Id*. at ¶ 99.

The expansive Security Agreement with MLJ granted SIR:

> a security interest in all accounts; accounts receivable; contract rights . . . finished goods and all other items customarily classified as inventory . . . chattel paper; instruments; documents; letters of credit; all funds on deposit with any financial institution; commissions; real estate listings and listing Agreement and related rights which are located at or related to the residential real estate brokerage business conducted by Debtor and including the proceeds and products therefrom and any and all substitutions, replacements, additions and accessions thereto and . . . all general intangibles (collectively the Collateral") as well as all parts, replacements, substitutions, profits, products and cash and non-cash proceeds of the foregoing Collateral. . . .

Compl. Ex D, at 1, ECF No. 1-6.

SIR sent MLJ a letter dated July 25, 2011 terminating the franchise. Caulfield Dec. Ex. A, at 1, ECF No. 26, PageID 349. However, the letter granted MLJ a months-long grace period to wind

down the business. The parties dispute whether MLJ continued to operate as a franchisee during that time (and thus, whether no-compete provisions are applicable). In any event, it does not seem to be disputed that SIR eventually ordered MLJ to cease all operations by March 23, 2012.

Defendant Grafton Holdings, LLC, (doing business as Conlon) ("Conlon") is a competitor of SIR. Conlon admits that on March 15, 2012, it entered into a lease for the same office space that MLJ occupied, but it contends it did not begin operating its business there until March 21, 2012, the same day MLJ wound down operations there. Caulfield is now an employee of Conlon, but she represents that she has no ownership or management interest in Conlon. On March 23, 2012, SIR filed a UCC-1 Financing Statement recording its security interest in MLJ's collateral. It also filed suit in this Court on the same day. On April 3, 2012, Caulfield filed for bankruptcy. MLJ has not filed for bankruptcy.

SIR's Amended Complaint sues Conlon and MLJ for trademark infringement, false designation of origin/false advertising, trademark dilution, common law unfair competition, and breach of the promissory note. MLJ also is sued for breach of the Franchise Agreement, replevin, and for an audit and accounting. Conlon is sued for unjust enrichment and tortious interference with a contract. All Defendants are sued under civil conspiracy and constructive trust actions.

SIR argued in its original Motion that MLJ had control over seventy property listings that were part of the Security Agreement MLJ signed with SIR. SIR now seems to concede the number of listings at issue is significantly less, but its main contention, that the listings are SIR's property to which it is entitled, remains the same. It seeks a preliminary injunction in regards to these disputed listings. But rather than seeking to repossess the listings (and trying to sell the properties at issue itself), SIR argues the least intrusive temporary injunction would be to order Conlon to put into escrow the commission earned from these properties. The Conlon agent who sells the property could then come to SIR and negotiate with Conlon for a reasonable agent commission, SIR suggests.

## II. LEGAL STANDARD

To win a preliminary injunction, a party must show that: it is reasonably likely to succeed on the merits, it is suffering from irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

## III. ANALYSIS

SIR has requested relief in the form of a preliminary injunction, which it claims is warranted because it has a secured interest in the collateral: the real estate listings.

### A.  Likelihood of Prevailing on the Merits

Although SIR has pegged its right to immediate repossession (*i.e.*, before judgment on the merits) of its collateral to the Illinois Commercial Code (the state version of the Uniform Commercial Code (the "UCC")), SIR engages in little to no analysis of what rights the UCC gives it against a third party possessor (Conlon).  SIR does not even identify what type of collateral the listings are under the UCC.  SIR has not addressed whether Conlon took the listings from MLJ as a *bona fide* purchaser or whether it took them for no value, and MLJ and Conlon do not offer this information either.

The lack of analysis by SIR on the nature of the collateral and how Conlon acquired it is unfortunate because "[t]he definitions [of collateral] are . . . important because a mode of perfection that is permitted or even required for one kind of collateral may not be permitted for other kinds of collateral.  In addition, the rights of third parties, such as bona fide purchasers of assets from the debtor, sometimes depend upon the nature of the collateral."  4 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 30-1, 5 (Practitioner Treatise Series, 6th ed. 2010).  The rights of a third party, Conlon, are precisely what is at issue here, and SIR has undertaken no exploration of its right to repossess collateral from a third party under the UCC.

As SIR's own quoted case *Christian Legal* notes, the burden of showing a likelihood of success on the merits is on the party moving for the preliminary injunction. *Christian Legal*, 453 F.3d at 859. SIR merely cites to UCC passages regarding the general effectiveness of security agreements (§ 9-201) and the sufficiency of a financing statement (§ 9-503) without discussion. SIR does not deal with § 9-203, which requires that a third party have taken the collateral for value in order for a security agreement to be enforceable against it.

Thus, without addressing whether value was given for the listings (and a whole host of potentially applicable UCC sections regarding rights of third parties), SIR has not sustained its burden regarding likelihood of prevailing against Conlon under the UCC.

SIR suggests it is assured of prevailing against Conlon on the tortious interference count, and that this therefore justifies the escrow of the disputed property. There are two problems with this argument. First, Conlon has denied it was aware of the Franchise Agreement or the Security Agreement, and SIR has presented no evidence to refute this. *See Caterpillar Fin. Servs. Corp. v. Peoples Nat'l Bank N.A.*, No. 10-298, 2012 U.S. Dist. LEXIS 89427 (7th Cir. Jun. 28 2012) (required element of tortious interference is knowledge of the existence of the contract). Second, even if likelihood of prevailing on the tortious interference count had

- 6 -

been shown, the damages award SIR would be due would be a tort award not directly connected to the listing proceeds. A preliminary injunction would thus constitute an equitable attachment prohibiting Conlon from access to its property in anticipation of a judgment. Illinois does not allow such equitable attachments, as Defendants point out. *Franz v. Calaco Dev. Corp.*, 751 N.E.2d 1250, 1256 (Ill. App. Ct. 2001) (quoting *Carriage Way Apartments v. Pojman*, 527 N.E.2d 89, 96 (Ill. App. Ct. 1988).

### B. Adequate Remedy at Law

The Court is also not convinced that SIR is correct that there is no adequate remedy at law. SIR argues that if Conlon sells the listings properties, SIR will have to proceed against both Conlon and seventy individual Conlon listing agents selling the properties on behalf of Conlon. This will be inherently impractical because litigation expenses will dwarf the recovery, SIR says.

Implicit in this argument is the assumption that the agents take the entire commission and then transfer along to Conlon its portion of the commission. If the converse is true (that Conlon takes the entire commission and then pays its agents afterwards), there is no reason that Conlon won't be responsible to SIR for the entire commission in a judgment. As SIR itself stated, "Conlon's contractual agreements do not take precedence over Sotheby's secured property interests in the appropriate listings." Pl.'s Reply Br. 3. SIR has presented no evidence as to how Conlon

actually structures its listing agreements, but if the MLJ listing agreements that Conlon entered into evidence are representative of the industry, the property seller's obligation to pay a commission appears to extend only to the agency, not to the listing agent. Burford Decl. Ex. 10, at 6-9, ECF No. 38-2, PageIDs 621-264.

Even if the agents take first, SIR in its Reply appears to concede that far fewer than 70 properties, perhaps as few as 23, are at issue, meaning fewer actions will be necessary to recover the funds. Whittling down that number even further, multiple listings appear to be managed by a common agent, meaning even fewer actions would be necessary to recover. For example, listings No. 9, 22 and 33 appear to have the same listing agent. *See id.* at Exs. 9, 22 and 23. Listings 18, 29, 30, 39 and 67 also appear to have a single agent. *See id.* at Exs. 18, 29, 30, 39 and 67.

Finally, SIR has not shown with specificity or by citing any applicable cases how their potential action against the individual agents does not arise "out of the same transaction, occurrence, or series of transactions or occurrences," and therefore the agents cannot be joined in one action. FED. R. CIV. P. 20(a)(2)(A).

There is no dispute here that money is the only relief sought by SIR. (Earlier SIR allegations that Conlon continues to infringe on SIR's trademarks have been withdrawn by SIR.) There are also no allegations that Conlon or any of the parties besides Caulfield are insolvent. Therefore, there is an adequate remedy at law.

### C. Balance of Harms

Even if the threshold elements needed to obtain a preliminary injunction had been met in this case, the potential harm to the public does not weigh in favor of issuance here. While SIR commendably sought to minimize the impact of a preliminary injunction upon all parties by focusing on the proceeds of the listings, none of the parties in this case has really considered the impact of a preliminary injunction upon the property owners whose properties are the subject of these listings. And despite SIR's best intentions, the individual listing agents would still be significantly affected.

SIR contends there would be little impact on the agents, because the Conlon listing agents would simply come to SIR to negotiate a fair commission. There is no guarantee such negotiations would be successful, and listing agents could toil to sell a property only to find out they must accept less than they expected, or perhaps nothing at all.

The property owners themselves would also likely be affected. Even if one listing agent was refused commission or had to engage in protracted, at-gunpoint negotiations with SIR, word would get out among listing agents that the former-MLJ listings were tainted, and agents would likely shy away from investing any significant time in moving those properties. If this occurred, property owners

would suffer from a dispute they did not create.  Therefore, the burden on the public weighs against an injunction in this case.

### IV. CONCLUSION

SIR has not met its burden in showing either a likelihood of success in its action, or that no adequate remedy at law exists. For these reasons, and because the balance of harms unfairly weighs on the public, the Motion for Preliminary Injunction is denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 7/12/2012